11 KIRBY, J.
This is an appeal from a judgment of the Civil District Court for the Parish of Orleans, which sustained an objection to the candidacy of Shawn M. Barney for the office of State Senator for the Third Senatorial District of Louisiana. We affirm.[1]

STATEMENT OF THE CASE

On April 19, 2005 Mr. Barney filed a notarized notice of candidacy for election to the office of “State Senator, 3rd Senatorial District” in the primary election scheduled for May 21, 2005. That form lists his “domicile address: as 4490 DeMontluzin Street, New Orleans, LA 70122.” That form also shows that he is a qualified elector of Orleans Parish in Ward 8, Precinct 21.
Subsequently, on April 7, 2005 Lisa Suarez filed suit in the Civil District Court objecting to Mr. Barney’s candidacy.[2] One basis alleged for the objection was that despite the assertion in the sworn notice of candidacy, Mr. Barney was not registered to vote in Ward 8, Precinct 21, but that, according to official records of Lthe Orleans Parish Registrar of Voters, Mr. Barney was in fact registered in Ward 9, Precinct 44 at an address of 11900 Morri *557 son Road. The other basis asserted for the objection was that, contrary to the information in the notice of candidacy, Mr. Barney was domiciled at the 11900 Morrison Road address, which is not physically within the boundaries of the Third Senatorial District. Ms. Suarez prayed for judgment disqualifying Mr. Barney as a candidate for the Third Senatorial District seat. Trial was held May 2, 2005 before The Honorable Carolyn W. Gill-Jefferson.[3]

FACTS

At trial Mr. Barney testified that he provided all of the information on the notice of candidacy form, except the ward and precinct data, to a clerk who typed it into a computer. He did not know the ward and precinct designation for the place he voted and the typist asked someone else in the clerk’s office to get the appropriate numbers. That person used the address he gave on the form to find the ward/precinct information. Mr. Barney admitted reading the data as it was being entered into the computer and he signed the form when it was complete.
The testimony reveals Mr. Barney lived for most of his youth with his parents at the Morrison Road address. After graduating from high school in New Orleans, he attended college at Howard University in Washington, D.C. and upon graduation traveled to various temporary job assignment locations for his | ^employment. Mr. Barney decided to return to New Orleans shortly after the 9-11 disaster in 2001 and moved in with his parents at the Morrison Road address. He resided there until June of 2003.
Mr. Barney entered into an unrecorded lease for the DeMontluzin address. It expired in May 2004, but Mr. Barney has been paying the rent on a month-to-month basis. He testified that it was his intention to establish his first adult home by moving out of his parent’s house and into the DeMontluzin Street apartment. There was corroborating testimony from his roommate, his family, his neighbor, landlord and his gardener.
Several documents were at issue at the trial. These documents include Mr. Barney’s driver’s license, car registration and voter’s registration card. All of these documents list Mr. Barney’s address as Morrison Road, which is outside the Third Senatorial District. With regard -to these documents, Mr. Barney stated that when he renewed his driver’s license, after having entered into the lease for the DeMont-luzin Street property, he did not change the address to reflect his new, current address. In December 2003 he purchased a new automobile and financed it through his bank. It is registered at the Morrison Road address. Mr. Barney testified the bank must have done that, although he admitted that he would have given the bank the information it used to register the vehicle. Further, Mr. Barney admitted to having voted in Ward 9, Precinct 44 as recently as the presidential election of November 2004. It was not until April 28, 2005 that he changed his voter’s registra *558 tion record to reflect the DeMontluzin address.

\4tiie trial court judgment

In its judgment, the trial court declared Mr. Barney ineligible and disqualified as a candidate for State Senator, Third Senatorial District. It also ordered the defendant election officials to remove his name from the ballot if the ballots had not been printed. Alternatively, if they had already been printed, then said officials were to void any votes east for Mr. Barney. In Reasons for Judgment the court indicated it reached this result because it, relying upon an Opinion of the Attorney General and a 1990 edition of Black’s Law Dictionary, understood the word “elector” on the notice of candidacy to mean “voter;” that Mr. Barney was not an elector/voter of Ward 8, Precinct 21 thereby making his qualifying form incorrect; and that an incorrect qualifying form is sufficient to disqualify a candidate.
On the domicile/residency issue, the court below found there was insufficient evidence to conclude that Mr. Barney is domiciled in the Third Senatorial District. The court noted the lease at the DeMont-luzin Street address, but the lease is not recorded and that Mr. Barney stated that he used the property to conduct his business affairs. The court was also aware of an application for a line of credit with Liberty Bank that gave Mr. Barney’s address on DeMontluzin Street. She further observed that the application was not recorded anywhere and that it was not a part of the public record. It is evident from the Reasons for Judgment that the court was impressed with the fact that the driver’s license, car registration and voter’s registration card all listed the Morrison Road address. It specifically called attention to the fact that even after having entered into the lease for DeMontluzin Street, Mr. Barney renewed his driver’s license at the Morrison Road | ¡¡address. The court concluded: “Considering all of the above, the court finds that there is insufficient evidence to conclude that Mr. Barney is domiciled within the district.” DISCUSSION
We affirm the judgment of the court below because it is undisputed that at the time he filed his candidacy papers Mr. Barney was not an elector of the Third Senatorial District that he sought to represent in the Louisiana Legislature.
Although the learned trial judge said in her Reasons for Judgment “there are no published cases which define elector,” We note Gossen v. Registrar of Voters, 59 So.2d 461 (La.App. 1 Cir.1952), to wit:
Black’s Law Dictionary defines an elector as: “a duly qualified voter; one who has a vote in the choice of any officer, a constituent.” Thus an elector is a person duly qualified to vote, regardless of whether he has exercised his right to vote or not. Id. at 463. See also: State v. Dauzat, 2002-1373 (La. App. 3 Cir. 4/2/03).[,] 843 So.2d 526.
Article III, § 4(A) of the Louisiana Constitution of 1974 provides:
An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and been actually domiciled for the preceding year in the legislative district from which he seeks election is eligible for membership in the legislature.
The sentence structure impels the conclusion that the word “elector” applies to each of the subsequent clauses or phrases setting forth essential qualifications.
We are reinforced in this view by reference to the Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. V (17th Days |fi[sic] Proceedings — July 19, 1973) at [316], here *559 inafter more simply “Transcripts.” As originally introduced to the delegates, the provision read:
Section 4(A): Every elector,[4] who at the time of the general election shall have reached the age of 18 years shall be eligible to membership in the House of Representatives. Every elector who at the time of the general election shall have reached the age of 21 years shall be eligible for[5] membership in the Senate. B. No person shall be eligible for membership in the legislature unless at the time of the general election he shall have been a resident of the State for two years and actually domiciled within the legislative district from which he seeks election for one year immediately preceding his election
[Emphasis added.]
* * *
It cannot be gainsaid that there is a distinction between the word “elector”[6] and the word “person”. It is thus readily apparent that as originally proffered to the delegates, the section would have linked the “elector” requirement only to the minimum age requirement.[7] Had this language remained, it would be reasonable to construe the section such that any elector, regardless of the situs of his voter 17registration, would be eligible to run for the legislature from the district in which he had actually resided for the preceding year. However, since the convention amended the provision into its present form, it is quite plain that it made a substantive change: “Elector,” i.e., registered voter, now applies to all of the qualifications, not just the minimum age requirement. Under the unambiguous language of the adopted constitution, in order to be eligible for membership in the legislature, at the time he or she files his notice of candidacy, the candidate must be an elector who:
1) Is at least eighteen years of age;
*560 2) Has resided in Louisiana for the preceding two years; and
3) Has been actually domiciled for the preceding year in the district he wants to represent.
Therefore, we conclude Mr. Barney lacks an objective, constitutionally mandated qualification for office: Being a qualified voter in the district he seeks to represent.
Having thus resolved the cáse it is unnecessary for us to consider the subjective factors of whether the incorrect ward and precinct information on the notice of candidacy was Mr. Barney’s error or the clerk’s error; whether it was simply a mistake or an intentional falsehood; or even whether the errors are subject to correction by reforming the notice of candidacy. These are all irrelevant inquiries under our view of the case
Likewise, it is unnecessary for us to go into the correctness of the domicile/residency issue. We note in passing, though, that if this were the only basis for the ruling of the court below, we would be hard-pressed to find it | Rmanifestly erroneous. It is evident from her Reasons for Judgment that the judge considered all the evidence on both sides of the case, weighed it and made credibility calls, giving more weight to the objective documentary evidence. It is obvious she found the plaintiff made out a case sufficient to shift the burden to defendant to show he was properly domiciled in the district and that he failed, in her view, to carry that burden. Perhaps this court or others would have weighed the evidence differently, but under our manifest error rule we cannot find on this record that the court below was manifestly erroneous or clearly wrong.
For these reasons the judgment of the trial court is affirmed.
AFFIRMED.
CANNIZZARO, J. — dissents with reasons.
MURRAY, J. — dissents for the reasons Assigned by J. CANNIZZARO and assigns additional reasons.
TOBIAS, J. — dissents for reasons assigned by J. CANNIZZARO.
LOMBARD, J. — dissents for reasons assigned by J. CANNIZZARO.
McKAY, J. — concurs with reasons.
JONES, J. — dissents.
GORBATY, J. — concurs with reasons.

. This matter was heard by the Court en banc pursuant to La. R.S. 18:1409(A). Judge Terri F. Love recused herself from this matter.

. In addition to Mr. Barney, made defendants were election officials Kimberly Williamson Butler, Clerk of the Criminal District Court for Orleans Parish, and Fox McKeithen, Secretary of State of Louisiana.

. Although the record before us does not contain a transcript of the testimony at the trial, a transcript of the testimony taken in the trial of a companion case challenging Mr. Barney’s candidacy in the Twenty-Fourth Judicial District for the Parish of Jefferson was admitted as a joint exhibit at the trial of this case and, therefore, is contained in this record. That transcript contains the relevant facts regarding this case. It was stipulated at oral argument of this appeal that the only testimony taken during the trial of the instant case was that of Mr. Barney, which was substantially similar to his testimony in the Jefferson Parish case. Therefore, all references to the trial testimony in this opinion refer to the testimony in the trial of the Jefferson Parish case.

. The punctuation here ",” appears in the Transcripts. However, in the committee report there is no punctuation. See: Official Journal of the Constitutional Convention of 1973 of the State of Louisiana, Eleventh Day's proceedings, July 6, 1973 at page 6, hereinafter simply, Official Journal.

. The word "for” appears in the Transcripts. In the committee report the word is "to.” See: Official Journal, July 6, 1973 at page 6.

. At this juncture it is worthy of note that the delegates to the convention were aware of the definition of the word "elector.” It was defined for them by delegates DeBlieux and Nunez as "a registered voter.” See: Transcripts, supra, at [322], This definition, of course, comports with the Louisiana jurisprudence on the subject, quoted above.

. The debates reveal a concern on the part of some delegates that the minimum voting age, which at that time had only recently been reduced, could be reduced further in the future. See Transcripts at [317]:
Mr. Bollinger Delegate Tobias, in your opinion, or from the arguments you are presenting in favor of the proposed amendment, wouldn't you consider a better provision to be simply state the elector can run since it might be in twenty or thirty years the U.S. Constitution might provide for an elector say of seventeen or sixteen and this same argument would prevail.
* * *
Mr. A. Landry ... Isn't it true that Mr. Roy’s amendment sets it at 18 so if the Louisiana legislature wants to reduce the age of an elector from 18 to 17 that it would be locked in at 18 and that 17 would not be eligible and would not be an elector under the present constitution as Mr. Roy so advocates .... Id. at [325].
It is thus clear that under the final, adopted, version of this section the convention decided that even if the voting age was reduced, the "elector” would still have to be at least eighteen years of age in order to be eligible for membership in the legislature.